**Martha BRAND, Plaintiff,**

v.

**Laurence A. TISCH et al., Defendants.**
**Civ. A. No. 65 Civ. 367.**

United States District Court
S. D. New York.
April 7, 1966.

Nathan B. Kogan, New York City, for plaintiff; David M. Palley, New York City, of counsel.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for defendants; Edward N. Costikyan, New York City, of counsel.

HERLANDS, District Judge:

Defendants have moved for an order:

"(a) Pursuant to Rule 41(b) of the Federal Rules of Civil Procedure, striking plaintiff's verification of the complaint and dismissing the complaint, for failure to comply with Rule 23(b) of the Federal Rules of [Civil] Procedure; and

(b) Pursuant to Rules 11 and 41(b) of the Federal Rules of [Civil] Procedure, striking plaintiff's attorneys [sic] certification of the complaint for failure to comply with Rule 11; and

(c) Pursuant to Rule 56 of the Federal Rules of [Civil] Procedure granting summary judgment for defendants against plaintiff, and for such other relief as the court may deem just and proper."

The court will treat the motion's three subdivisions seriatim.

## I.

That part of defendants' motion, made pursuant to Fed.R.Civ.P. 41(b) and 23(b), attacking the complaint as not properly verified is denied. We consider the Supreme Court's recent decision in Surowitz v. Hilton Hotels Corp., 86 S.Ct. 845 (1966), reversing, 342 F.2d 596 (7th Cir. 1965), to be dispositive of this issue. See generally Comment, Verification of Complaint in Stockholders' Derivative Suits Under Rule 23(b), 114 U.Pa.L.Rev. 614 (1966).

The plaintiff, Mrs. Brand, received in her capacity as a stockholder a proxy statement for the annual meeting of shareholders of Loew's Theatres, Inc., which was to be held on January 14, 1965. Embodied in that proxy statement was the recommendation of the "management" for a favorable vote on the Board of Directors' proposal to acquire the leasehold interest then held by Americana Hotel Operating Corp. in the Americana Hotel, Bal Harbor, Florida. Mrs.

Brand attended the stockholders' meeting of January 14, 1965 and expressed her "displeasure" with the proposed acquisition by Loew's of the leasehold interest from Americana Hotel Operating Corp., a corporation whose stock was owned by Tisch Hotels, Inc., which, in turn, owned approximately 26 percent of the stock of Loew's Theatres, Inc. Laurence and Preston Tisch, personal acquaintances of Mrs. Brand, each owned 50 percent of the stock of Tisch Hotels, Inc. They were also members of Loew's Board of Directors. Subsequent to the stockholders' meeting of January 14, 1965, Mrs. Brand conferred with her attorney concerning the propriety and regularity of the proposed acquisition.

In the *Surowitz* case, supra, the plaintiff perceived no indication of any possible irregularity in the notice she received from the Hilton Hotels Corp. announcing its plans to purchase a large amount of its own stock. She took the notice to her son-in-law, an attorney, "because she wanted it explained to her * * *." It was her son-in-law who was "disturbed by it" and who "straightway set out to make an investigation." Her son-in-law "talked the matter over" with another lawyer who was to represent her subsequently in her suit. They decided to investigate further; and they "pursued whatever avenues of information that were open to them." The Supreme Court's opinion does not indicate what those areas of information were in the *Surowitz* case, but the two attorneys decided that they had enough information to begin drafting a complaint, which they undertook to do after Mrs. Surowitz's son-in-law explained to her that in his opinion a cause of action existed and suggested the commencement of a derivative suit. Mrs. Surowitz "agreed for suit to be filed in her name." "Mrs. Surowitz verified the complaint, not on the basis of her own knowledge and understanding, but in the faith that her son-in-law had correctly advised her that the statements in the complaint were either true or to

the best of his knowledge he believed them to be true."

■ In the case presently before us, the plaintiff herself was the prime mover. As in *Surowitz*, "there is not one iota of evidence that * * * [Mrs. Brand or her attorney] sought to do the corporation any injury in this litigation." Nor is there any contention here that this is "a strike suit or anything akin to it," nor is there "one word or one line of actual evidence in this record indicating that there has been any collusive conduct or trickery by those who filed this suit * * *."

■ In short, we interpret the Supreme Court to have held that the verification requirement of Fed.R.Civ.P. 23(b) is satisfied when a plaintiff verifies a complaint, not on the basis of his own knowledge and understanding, but on the basis of his good faith reliance on the advice of an advisor, whose qualifications and integrity are known to the plaintiff, that the statements in the complaint are either true or believed by the advisor, to the best of his knowledge, to be true. That test is undoubtedly satisfied in the case at bar.

## II.

That part of defendants' motion, pursuant to Fed.R.Civ.P. 11 and 41(b), for an order striking plaintiff's attorney's certification of the complaint as sham is also denied.

Defendants cite two cases in support of their position. Both are factually distinguishable from the case at bar.

In Freeman v. Kirby, 27 F.R.D. 395 (S.D.N.Y.1961), the attorney was the motivating force behind the litigation. Not only was there no agreement for the nominal plaintiff to compensate the attorney, but the attorney paid the "plaintiff's" hotel and travel expenses incurred in connection with the taking of his deposition. The court pointed out that the attorney "in his eagerness to be of service, expressed a desire to bring this suit even before he had received * * * the alleged source of his grounds to support the allegations of the complaint. He ap-

parently felt so offended that he instituted suit in the names of persons whom he had not previously met and allegedly expended approximately $12,000 in disbursements without any definitive agreement with his client to be made whole." Id. at 398–399. By his own admission, the attorney's sole source of knowledge and the grounds for his belief in the allegations of his complaint were two memoranda. "He neither knew who had authored the memoranda nor inquired into the truth of the allegations therein * * *." Id. at 399. The court stated that "if an attorney's signature to a pleading is to be more than a hollow gesture he must do more than obtain a person willing to lend his name as a plaintiff * * *." Ibid.

Defendants also cite Nichols v. Alker, 126 F.Supp. 679 (E.D.N.Y.1954). There, the complaint contained many patent misstatements of fact and inaccuracies which the court found would have been apparent to the attorney had he made even a cursory investigation. In addition, the court, for other reasons, "was not in the slightest degree impressed by his good faith * * *." Id. at 684.

█ Here, plaintiff's attorney, after discussion of the facts with the plaintiff, utilized the services of a certified public accountant to analyze the financial data contained in the proxy statement. The proxy statement was also examined by an office associate of plaintiff's attorney who contributed his analytical abilities. What, if anything else, was done in the way of an investigation of the facts is not clear from the submitted papers. However, it was the unanimous opinion of those individuals that the proxy statement contained statements which were false and misleading with respect to material facts and omitted to state material facts necessary in order to make the statements therein not false or misleading.

In not too dissimilar circumstances, this court has said that "[a] pleading should be stricken only when it appears beyond peradventure that it is sham and false and that its allegations are devoid of factual basis; otherwise it would deprive a party of his right to a trial of the issues posed by his complaint—it would mean trial by affidavits." Murchison v. Kirby, 27 F.R.D. 14, 19 (S.D.N.Y.1961).

Plaintiff's attorney represents to the court that he made an investigation of the facts and that the complaint alleges such facts as were then available to him. The court does not find that to the best of plaintiff's attorney's knowledge, information, and belief there was not good ground to support the complaint. Therefore, it denies defendants' motion to strike the certification of plaintiff's attorney as sham.[1]

### III.

That part of defendants' motion for an order, pursuant to Fed.R.Civ.P. 56, granting them summary judgment is also denied in all respects. The court, in its discretion, pursuant to Fed.R.Civ.P. 56(f), does not find that summary judgment is appropriate at this time.

█ Defendants have taken a deposition of the plaintiff which contains some two hundred pages. Plaintiff has not yet had the opportunity to engage in any pre-trial discovery whatsoever. Plaintiff cannot at this time present, by affidavit, facts essential to justify her opposition to defendants' summary judgment motion because the allegations in the complaint can ultimately only be proved or disproved by facts peculiarly within the defendants' knowledge.

Therefore, the court denies defendants' motion for summary judgment so that plaintiff can proceed to make reasonable use of the discovery devices provided by the Federal Rules of Civil Procedure. Should the time come when the defendants are of the belief that the burdens

---

1. Mr. Justice Harlan, concurring in the *Surowitz* case, supra, found that plaintiff's attorney's signature constituted an adequate verification by counsel and it does not appear from the majority opinion that the attorney there had a greater amount of factual support for his "reasonable beliefs growing out of careful investigation" and "grave suspicions" than was in the possession of the attorney in the case at bar.

imposed by plaintiff's discovery are too onerous, they may invoke, where good cause can be shown, the protective safeguards built into the Federal Rules. The court's present denial of defendants' motion for summary judgment is, of course, without prejudice to their renewal of that motion should they believe that changed circumstances warrant it. So ordered.