**Joseph SCHNEIDER, on behalf of himself and all others similarly situated as shareholders of the Coca-Cola Company, Plaintiff,**

**v.**

**J. Paul AUSTIN, Charles H. Candler, Jr., Thomas H. Choate, George S. Craft, Fillmore B. Eisenberg, E. Garland Herndon, Jr., M.D., Lindsey Hopkins, John T. Lupton, James D. Robinson III, James M. Sibley, J. Lucian Smith, William B. Turner, James B. Williams, George W. Woodruff, R. W. Woodruff, and the Coca-Cola Company, Defendants.**

No. 80 Civ. 7026.

United States District Court,
S. D. New York.

Jan. 15, 1982.

Pincus, Ohrenstein, Bizar, D'Alessandro & Solomon, New York City, for plaintiff; Leonard I. Schreiber, Irving Bizar, New York City, of counsel.

Winthrop, Stimson, Putnam & Roberts, New York City, for defendant Directors; Merrell E. Clark, Jr., Stephen A. Weiner, Robert J. Sussman, New York City, of counsel.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for defendant The Coca-Cola Co.; Mark A. Belnick, Earl H. Doppelt, Richard A. Rosen, New York City, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

Defendants move to dismiss this shareholder's derivative action for the class representative's alleged failure to comply with Rules 23.1, 11 and 9(b), F.R.Civ.P. Joseph Schneider brought this action against the Coca-Cola Company ("Coca-Cola") and its fifteen directors to recover for the corporation some $50 million dollars lost allegedly as a result of the directors' improper conduct, and to set aside the May 5, 1980 election of five of the named directors. At the core of this controversy is the sale by Coca-Cola of its wholly owned subsidiary, Coca-Cola Bottling Company of Baltimore.

In essence, plaintiff alleges that Coca-Cola received inadequate consideration for the sale of the Baltimore entity. Furthermore, the divestiture angered plaintiff because it contradicted the company's prior aggressive, acquisition-oriented policy. Schneider alleges that Coca-Cola engaged in this questionable transaction, in part, to create a powerful new bottler which would eliminate competition in the mid-Atlantic region and which could be controlled by defendant Austin upon his retirement as the company's Chief Executive Officer. Three causes of action arise from this supposedly ill-advised sale and the creation of Austin's extraordinary retirement plan: in failing to disclose the sale agreement in the proxy statement for the May 5, 1980 annual meeting, defendants allegedly violated § 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a), and Rules 14a-3 and 14a-9, 17 C.F.R. §§ 240.14a-13 and 240.14a-9, promulgated thereunder, and, in bringing about the challenged divestiture, defendants wasted the corporation's assets in breach of their fiduciary obligations and intentionally interfered with Coca-Cola's business opportunities.

Plaintiff has owned 200 common shares of Coca-Cola stock since March 1976. Nevertheless, defendants assert that Schneider is not a proper shareholder representative pursuant to Rule 23.1, F.R.Civ.P., because he had no proper basis for verifying the complaint and does not fairly and adequately represent the interests of Coca-Cola's other shareholders. As for the propriety of plaintiff's verification, defendants' objections are unfounded. The verification requirement was not conceived as a means to bar derivative actions, but merely as a guardian against "strike suits." *Surowitz v. Hilton Hotels Corporation*, 383 U.S. 363, 371, 86 S.Ct. 845, 850, 15 L.Ed.2d 807 (1966). Where, as here, there is no evidence that plaintiff seeks only to profit by provoking settlement of worthless, but annoying, claims, the action is not defeated by the fact that verification was based on the advice of counsel. *See id.* at 370-1, 86 S.Ct. at 849-50; *Brand v. Tisch*, 253 F.Supp. 122, 124 (S.D.N.Y.1966) (Herlands, J.). Schneider's motivation is not questioned—his claim that the shareholders were wronged by Coca-Cola's departure from its acquisitive nature exemplifies the protective role envisioned by the derivative action format. *See Surowitz, supra* 383 U.S. at 371, 86 S.Ct. at 850.

The fairness and adequacy of Schneider's representation is still to be determined.

Defendants scrutinize Schneider's qualifications under criteria derived in large part from decisions interpreting Rule 23(a)(4), F.R.Civ.P., which imposes a fair and adequate representation standard upon purported class action plaintiffs. Resort to analogy is supposedly necessitated by the relative paucity of cases expressly dealing with Rule 23.1. *See* Wright & Miller, *Federal Practice & Procedure*: Civil § 1833 (1972). Differences between derivative and class actions, however, make clear that some factors used to evaluate class representatives are irrelevant when shareholders litigate for a corporation's benefit. *Sweet v. Bermingham*, 65 F.R.D. 551, 554 (S.D.N.Y.1975) (Cannella, J.); *see* Wright & Miller, *supra* at § 1833 p. 393 ("the most important [Rule 23(a)(4)] element to be considered [under Rule 23.1] is whether plaintiff's interests are antagonistic to those he is seeking to represent"). And, extensive reliance on class action case law is inappropriate since Rule 23.1 has developed an independent jurisprudence.

■ While stated in various ways, the rule that has emerged with respect to Rule 23.1 focuses generally "on the degree of certainty that a derivative plaintiff will vigorously prosecute the corporate claim in the interest of the minority stockholders." *Cohen v. Bloch*, 507 F.Supp. 321, 324 (S.D.N.Y.1980) (Sweet, J.). If plaintiff demonstrates a desire to pursue conscientiously the corporation's action, and engages competent counsel to do so, the adequate representation requirement is met unless there exists between plaintiff and the other shareholders antagonism or some conflict of interest threatening to weaken the forcefulness of the prosecution. *Id.* at 324 n.2; *Schupack v. Covelli*, 512 F.Supp. 1310, 1312 (W.D.Pa.1981); *Sweet, supra* at 554.

■ In light of these specific guidelines, much of defendants' argument is inapposite. Defendants have not addressed either prong of the dual standard set forth above. There has been no showing that Schneider is not vigorously pursuing this action, nor has there been any indication of potential conflict between plaintiff and the shareholders similarly situated.[1] Plaintiff's seriousness in prosecuting the claims is unquestioned: he was upset by a newspaper article which disclosed Coca-Cola's sale of its Baltimore bottling subsidiary, the consideration received in that transaction and the antitrust litigation arising therefrom, Schneider deposition at 21–4; he retained experienced counsel to investigate the matter and, following their advice, instituted the present lawsuit, *id.* at 24; Schreiber affidavit at 2–3; and he declared himself willing and able to conduct this derivative action, Schneider deposition at 41.[2]

Defendants' challenge to Schneider's qualifications is grounded in considerations other than those discussed above. They claim that plaintiff did not investigate the facts prior to instituting this action, does not possess sufficient knowledge of the claims asserted, does not meet the standards of integrity and forthrightness demanded of derivative plaintiffs and lacks interest in the matters complained of. None of these allegations merits dismissal of Schneider's action.

*Rogosin v. Steadman*, 65 F.R.D. 365 (S.D.N.Y.1974) (Owen, J.), is the primary source of defendants' contention that a derivative plaintiff's preliminary investigation of his allegations enters into the "fairly and adequately" calculus. *Rogosin* spoke to the verification requirement of Rules 11 and 23.1, F.R.Civ.P., and not specifically to the adequacy of representation, in holding that some person must responsibly investigate plaintiff's allegations. *Id.* at 366 ("I reach only the 'verification' issue"); *see also Porte v. Home Federal Savings & Loan*

---

**1.** Defendants bear the burden of demonstrating inadequate representation. *Smallwood v. Pearl Brewing Company*, 489 F.2d 579, 592–3 n.15 (5th Cir. 1974); *George v. LeBlanc*, 78 F.R.D. 281, 284 (N.D.Tex.1977), *aff'd*, 565 F.2d 1213 (5th Cir.).

**2.** Even if Schneider's financial or personal commitment to this action were challenged more seriously, such concerns alone would not mandate dismissal given the presence of counsel determined to see the litigation through. *See Cohen, supra* at 325; *George v. LeBlanc, supra* at 286.

*Association of Chicago,* 409 F.Supp. 752, 754 (N.D.Ill.1976). That requirement, derived from *Surowitz, supra,* is intended to protect against strike suits in furtherance of the purpose of verification. *See Porte, supra* at 754. Thus, Judge Owen's dismissal, *Rogosin v. Steadman,* 71 F.R.D. 514 (S.D.N.Y. 1976), was motivated by his belief that no defendant should be compelled to defend a derivative action "where the plaintiff is but a puppet for others, neither instigating the action, nor having interest in or awareness of its basis." 65 F.R.D. at 367.

As noted above, plaintiff properly verified the complaint—he brought suit to benefit the corporation, not out of a desire to do it harm. This, and not the degree of investigation *per se, Surowitz* held, is the essence of verification requisite. *See George v. LeBlanc,* 78 F.R.D. 281, 285 (N.D. Tex.1977), *aff'd,* 565 F.2d 1213 (5th Cir.) (*Surowitz* is satisfied "so long as plaintiff stands behind the merits of the suit"). The court need only be assured that plaintiff had an adequate basis to believe he had a maintainable cause of action when he verified the complaint. Since Schneider was the motivating force in the institution of this action, and the complaint was verified after counsel apprised him of the results of their investigation into Coca-Cola's activities, this standard is met.[3]

Defendants' other objections to Schneider's representative status are equally insubstantial. Plaintiff's alleged unfamiliarity with the particulars of the lawsuit, his failure to vote his Coca-Cola shares and his lack of veracity might be critical if this were a class action, but seem to be among the factors irrelevant to the distinct circumstances of derivative actions. That the cause of action belongs to the corporation and not the named plaintiff makes it less likely that any individual minority shareholder could offer the type of personal knowledge of factual circumstances available from an informed class representative.

*See Greenspan v. Brassler,* 76 F.R.D. 130, 133 (S.D.N.Y.1978) (MacMahon, J.) (discussing class action representation). Therefore, the instant action should not be dismissed because of Schneider's limited involvement in its preparation or his inability to identify the individual defendants or the details of his claims. None of these shortcomings impacts upon his ability, with the aid of competent counsel, to pursue vigorously this derivative action.

Any lack of integrity exhibited by plaintiff's affirmation that his interrogatory responses were true to his own knowledge does not approach a level which would cast doubt upon his acceptability as a fiduciary for his fellow shareholders. Clearly he cannot be accused of "total and habitual disdain and contempt for law and fiduciary responsibility." *See Roussel v. Tidelands Capital Corporation,* 438 F.Supp. 684, 687 (N.D.Ala.1977). *Roussel*'s language implies that dismissal is proper only where plaintiff's prior conduct indicates a risk of unfaithful representation. Such is not a foreseeable problem here.

Nor is Schneider's failure to exercise Coca-Cola proxies, including the one challenged in this action, fatal to his complaint. His expressed concern over the corporation's apparent shift in policy and the allegedly questionable circumstances in which that shift occurred insures the vigor of his prosecution of an action instituted to remedy the perceived wrong and reimburse Coca-Cola for its alleged losses. His voluntary disenfranchisement cannot prejudice his representation when the complaint asserts that the election was tainted by defendants' nondisclosure of information upon which he might have based his decision.

In essence, defendants' Rule 11 argument parallels their challenge to the quality of plaintiff's investigation of the claims. They discount plaintiff's assertion that counsel "carefully examined and analyzed all publicly available documents filed regarding

---

**3.** Dismissal would not be appropriate under a formalistic, rather than a substantive, interpretation of *Rogosin.* Looking only to the fact of investigation, and not to plaintiff's motivation for bringing suit, it appears that counsel gathered all available data concerning Coca-Cola, and analyzed it, before recommending resort to litigation. *See* Schreiber affidavit at 4. They could not be expected to pierce the corporate boardroom to discover additional details about allegedly secretive conduct.

The Coca-Cola Company," Schreiber affidavit at 4, and posit that counsel drafted the complaint in reliance upon one newspaper article and the complaint in an unrelated private antitrust action against Coca-Cola. Rule 11 is violated, they contend, when an attorney signs a complaint on such a basis, even if bad faith must be demonstrated to establish an intent to defeat the rule.

Rule 11 dismissal is proper "only when it appears beyond peradventure" that the pleading is "sham and false and that its allegations are devoid of factual basis." *Murchison v. Kirby*, 27 F.R.D. 14, 19 (S.D.N.Y.1961) (Weinfeld, J.). A lesser standard would replace full trial of the issues with a battle of affidavits and legal memoranda. *Id.* Simply put, "[t]he standard under Rule 11 . . . is bad faith." *Nemeroff v. Abelson*, 620 F.2d 339, 350 (2d Cir. 1980).

Plaintiff's counsel did not violate Rule 11. Defendants' view of the matter suffers from tunnel vision. They focus exclusively on the allegations regarding retirement benefits intended for Mr. Austin, claiming that those allegations were taken directly from the complaint in the antitrust action with no attempt to verify them. This perspective ignores the true foundations of these causes of action, that defendants wronged Coca-Cola by entering a wasteful business transaction and violated the securities laws by withholding from the shareholders material information concerning that deal. Defendants suggest, and the court can see, no reason to doubt counsel's sworn statements that the complaint was signed in the belief that it stated a valid claim. *See* Schreiber affidavit; Bizar affidavit. The cases cited in favor of dismissal are distinguishable as they involved frivolous assertions entirely based upon unverified hearsay. *See, e.g., Miller v. Schweickart*, 413 F.Supp. 1059, 1061 (S.D.N.Y.1976) (Weinfeld, J.); *Freeman v. Kirby*, 27 F.R.D. 395 (S.D.N.Y.1961) (Bicks, J.).

Defendants also contend that the complaint does not state with particularity the circumstances constituting fraud and, therefore, runs afoul of Rule 9(b), F.R. Civ.P. Again, their theory depends upon a restrictive reading of the complaint, one which raises to a preeminent position Austin's alleged retirement plan. All the missing particulars complained of relate to this allegation. As noted above, even if this allegation is baseless, plaintiff has alleged enough facts going to his causes of action to defeat a motion to dismiss based on the adequacy of the pleading. Schneider's complaint does not merely contain allegations of fraud, but sets forth the facts upon which the claim is founded, thus satisfying Rule 9(b). *See Schlick v. Penn-Dixie Cement Corporation*, 507 F.2d 374, 378–9 (2d Cir. 1974), *cert. denied*, 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467. Specifically, the complaint discusses the worth of J. E. Crass Bottling Companies before it became involved in the transactions complained of, ¶¶ 26, 37, the terms of Coca-Cola's sale of the Baltimore franchise, ¶ 41, and the inadequacies in the consideration received by Coca-Cola, ¶ 50. These details, and others, are sufficient since a minority shareholder's limited knowledge of the corporation's internal affairs prevents more detailed pleading of the alleged fraud. *See Schlick, supra* at 379.

For the foregoing reasons, defendants' motion to dismiss is denied.

IT IS SO ORDERED.